FILED
2026 Jul-13 PM 12:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **HEATHER JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No**. __________ |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COLOMBIA HOLDINGS, LLC,** | | |
| **Defendant.** | | |

## COMPLAINT

Plaintiff Heather Jones, by and through undersigned counsel, complains of Defendant Colombia Holdings, LLC a/k/a Columbia Holdings, LLC, and alleges as follows:

## INTRODUCTION

1. This action arises from Defendant's procurement, alteration, and recording of a mortgage that Plaintiff executed on July 18, 2025, but that was later recorded in materially different form, including an altered legal description and a notary acknowledgment Plaintiff never executed.

2. Plaintiff seeks declaratory, injunctive, and equitable relief, together with damages, to quiet title, cancel the altered mortgage, and remedy Defendant's related misrepresentations, concealment, breach, and violations of federal law.

## PARTIES

3. Plaintiff Heather Jones is a citizen of Alabama and resides in Marshall County, Alabama.

4. Defendant Colombia Holdings, LLC is a limited liability company organized under the laws of Wyoming with its principal place of business in Wyoming.

5. Upon information and belief, Colombia Holdings, LLC transacts business in Alabama and directed the conduct complained of here.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Truth in Lending Act, 15 U.S.C. § 1601 et seq.

7. This Court has jurisdiction over Plaintiff's claim for damages and attorney's fees under 15 U.S.C. § 1640.

8. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative fact as the federal claim.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims

occurred in Marshall County, Alabama, and the subject real property is located there.

10. Venue is also proper because Defendant's alleged wrongful conduct was directed to and had effects in this District.

## FACTUAL ALLEGATIONS

### A. The Property Purchase and Deed Error

11. On or about April 15, 2025, Plaintiff purchased residential real property located at 324/332 Stone Road, Albertville, Alabama 35951, in Marshall County, Alabama, from the Defendant Colombia Holdings, LLC.

12. The purchase transaction included the residential lot and the manufactured home located on the property, identified as a Clayton Epic Explorer bearing Serial No. SAD032358AL A/B, which was sold to Plaintiff as part of the same transaction.

13. Plaintiff paid $187,500 for the combined transaction, which Plaintiff understood to include both the land and the manufactured home. The land alone was not worth the amount Plaintiff paid; the purchase price reflected the combined value of the land and the manufactured home.

14. The transaction was handled through Wright & Wright, P.C.

15. The Warranty Deed Plaintiff received described the Property, to wit:

> Begin at an existing 1" metal rod at the Northwest corner of the NW ¼ of the NW ¼, Section 9, Township 8 South, Range 5 East of Huntsville Meridian and run South 01 degrees 43'00" East, along the West line thereof, 101.81 feet to a point; thence run South 73 degrees 28'22" East, leaving said West line, 164.29 feet to a point on the Westerly R/W of Stone Road (60' R/W); thence run North 24 degrees 14'37" East, along said R/W, 166.87 feet to an existing ½" rebar on the North line of said ¼; thence run South 89 degrees 05'11" West, along said North line, 229.10 feet to the Point of Beginning, said property being a portion of the NW ¼ of the NW ¼, Section 9, Township 8 South, Range 5 East, Marshall County, Alabama and contains 0.58 acre, more or less.
>
> **Together with and Subject to** a 20 ft. access easement, the centerline described as: Commencing at an existing 1" metal rod at the Northwest corner of the NW ¼ of the NW ¼, Section 9, Township 8 South, Range 5 East of Huntsville Meridian, and run South 01 degrees 43'00" East, along the West line thereof, 101.81 feet to a point; thence run South 73 degrees 28'22" East, leaving said West line, 51.00 feet to the Point of Beginning of said centerline, thence continue South 73 degrees 28'22" East, along said centerline, 113.29 feet to a point on the Westerly R/W of Stone Road (60' R/W) and the end of said easement.

16. The Warranty Deed describes a parcel of 0.58 acres, which is a materially incorrect legal description of the property the Plaintiff purchased.

17. The property description error was significant because there are two similar properties side by side and the wrong legal description was used.

18. Plaintiff was not aware at the time of the later loan transaction that the deed contained the incorrect legal description.

19. Unknown to Plaintiff, a Correction Deed was later executed on February 17, 2026 and recorded on March 11, 2026 to address the defective legal description, describing the Property, as follows:

> Commence at an existing 1" metal rod at the Northwest corner of the NW 1/4 of the NW 1/4, Section 9, Township 8 South, Range 5 East of the Huntsville Meridian and run South 01 degrees 43'00" East, along the West line thereof, 101.81 feet to the Point of Beginning of the property described herein; thence run South 73 degrees 28'22" East, leaving said West line, 164.29 feet to a point on the Westerly R/W of Stone Road (60' R/W); thence run South 24 degrees 38'06" West, along said R/W 300.00 feet and South 07 degrees 10'06" West, along said R/W 147.98 feet to a point on the West line of said 1/4 and the Northerly R/W of Brothers Road; thence run North 01 degrees 43'00" West, leaving said R/W and along said West line, 466.49 feet to the Point of Beginning. Said property being a portion of the NW 1/4 of the NW 1/4, Section 9, Township 8 South, Range 5 East, Marshall County, Alabama and containing 0.68 acres, more or less.
>
> **Together with and Subject to** a 20 ft. access easement, the centerline described as: Commencing at an existing 1" metal rod at the Northwest corner of the NW 1/4 of the NW 1/4, Section 9, Township 8 South, Range 5 East of Huntsville Meridian, and run South 01 degrees 43'00" East, along the West line thereof, 101.81 feet to a point; thence run South 73 degrees 28'22" East, leaving said West line, 51.00 feet to the Point of Beginning of said centerline, thence continue South 73 degrees 28'22" East, along said centerline, 113.29 feet to a point on the Westerly R/W of Stone Road (60' R/W) and the end of said easement.

20. The correction deed describes a different parcel that is 0.68 acres and contains materially different bearings, distances, and calls from the original warranty deed. Plaintiff does not know whether it properly describes the property she purchased.

### B. The Manufactured Home

21. Plaintiff received Certificates of Origin and a Bill of Sale relating to the manufactured home. The bill of sale and related title paperwork were part of the same transaction by which Plaintiff purchased the property and were intended to transfer the manufactured home as part of that transaction.

22. The manufactured home was included in the purchase and was not separately excluded from the sale price.

23. The bill of sale identifies "2 Hundred Twenty Five Stone Road Trust" as the transferee; however, the home was purchased for Plaintiff's benefit and as part of the overall transaction concerning Plaintiff's residence, and no Alabama certificate of title has been issued or transferred reflecting clear ownership in Plaintiff's name.

24. The manufactured home was not separately included in the deed to the property, and its title status remains defective and uncertain.

25. Plaintiff resides in the manufactured home and the title to the same remains defective and uncertain.

### C. The Loan Solicitation and Execution

26. In early July 2025, Plaintiff contacted Real Estate agent Julie Witt about selling the property because of financial pressure.

27. Instead of facilitating a sale, Witt arranged for a private loan from Defendant Colombia Holdings, LLC.

28. On or about July 18, 2025, Plaintiff met after hours with Attorney James Cameron for execution of loan documents.

29. At that meeting, Plaintiff executed a Promissory Note in the principal amount of $19,000, bearing 10% interest, requiring monthly payments of $500, and including a balloon payment.

30. At the same meeting, Plaintiff executed a mortgage to secure the Promissory Note.

31. Plaintiff received wet-ink copies of the documents she signed.

32. Plaintiff was not told that the mortgage would later be altered, replaced, or recorded in a different form.

**D. The Altered Recorded Mortgage**

33. On or about January 8, 2026, a mortgage was recorded in the Marshall County Probate Office.

34. The recorded mortgage was materially different from the mortgage Plaintiff signed on July 18, 2025, as it contained a corrected legal description that was not part of the mortgage Plaintiff signed, but instead the parcel of 0.68 acres.

35. The recorded mortgage also contained a notary acknowledgment but Plaintiff never executed a mortgage describing the parcel of 0.68 acres.

36. Plaintiff was not informed of the change to the legal description or the revised mortgage and did not receive notice before the altered mortgage was recorded.

37. Defendant has used the recorded mortgage to assert a lien against Plaintiff's property and to threaten foreclosure.

## E. Payment Issues, Default Notices, and Foreclosure Threats

38. After execution of the loan documents, Plaintiff did not receive payment instructions from Defendant.

39. Plaintiff did not receive account statements from Defendant.

40. Plaintiff tendered, or was ready, willing, and able to tender, monthly payments of $500 as required by the Promissory Note.

41. Defendant refused to accept Plaintiff's monthly payments.

42. On February 11, 2026, McFadden, Rouse & Bender, LLC sent Plaintiff a foreclosure initiation letter on behalf of Defendant.

43. The February 11, 2026 letter demanded an accelerated balance of approximately $20,966.67.

44. After receiving the foreclosure initiation letter, Plaintiff contacted David Patton of Colombia Holdings, LLC and its attorney's office to determine the amount necessary to bring the loan current and avoid foreclosure.

45. Plaintiff sought to cure any alleged default and continue performing under the Note.

46. Although Patton's counsel stated that the decision whether to reinstate was up to Patton, Patton refused to accept any amount short of a full payoff balance.

47. On March 4, 2026, McFadden, Rouse & Bender, LLC sent Plaintiff a payoff demand letter.

48. The March 4, 2026 letter demanded $22,740.40, including late fees, attorney's fees, and other charges.

49. Defendant continues to threaten foreclosure based on the recorded mortgage.

**F. Harm**

50. Defendant's conduct has clouded title to Plaintiff's property.

51. Defendant's conduct has impaired the marketability of Plaintiff's property.

52. Plaintiff has been unable to refinance the property because of the recorded altered mortgage.

53. Plaintiff has been unable to sell the property because of the recorded altered mortgage.

54. Plaintiff has incurred legal expenses to investigate and address the title issues and foreclosure threats.

55. Plaintiff has suffered emotional distress.

56. Plaintiff has suffered loss of use, loss of marketability, and loss of the benefit of her bargain.

**G. TILA Disclosures**

57. The July 18, 2025 loan transaction was a consumer credit transaction for personal, family, or household purposes.

58. The loan was secured, if at all, by Plaintiff's residential real property.

59. Defendant was a creditor within the meaning of the Truth in Lending Act or acted through persons who were creditors and who regularly extended consumer credit.

60. Defendant did not provide Plaintiff with a written Truth in Lending disclosure statement prior to or at consummation of the loan.

61. Defendant failed to accurately disclose the finance charge.

62. Defendant failed to accurately disclose the annual percentage rate.

63. Defendant failed to provide an accurate payment schedule reflecting the $500 monthly payment obligation and balloon payment.

64. Defendant failed to accurately disclose the amount financed.

65. Defendant failed to disclose late charges and other material credit terms with the accuracy required by federal law and implementing regulations.

66. Plaintiff did not receive the disclosures required by 12 C.F.R. Part 1026 in a manner and at a time required by law.

67. Had Plaintiff received accurate disclosures, Plaintiff would have understood the cost and structure of the loan and would not have proceeded on the same terms.

## CLAIMS FOR RELIEF

### COUNT I
### Declaratory Judgment

68. An actual controversy exists between Plaintiff and Defendant concerning the validity, enforceability, and legal effect of the mortgage recorded on or about January 8, 2026.

69. Plaintiff contends the recorded mortgage is unenforceable because it was materially altered after execution without Plaintiff's consent and contains an acknowledgment Plaintiff never executed.

70. Plaintiff contends the recorded mortgage is unenforceable because Defendant failed to comply with Truth in Lending disclosure requirements for the July 18, 2025 consumer credit loan transaction, including by failing to provide clear and accurate disclosures of the finance charge, annual percentage rate, amount financed, payment schedule, and balloon payment terms before consummation.

71. Defendant is using the recorded mortgage as if it is valid and enforceable and may be used to foreclose on Plaintiff's property.

72. Plaintiff contends that the finance charges, late charges, and other material credit terms are not accurately stated and may be overstated, duplicated, or

otherwise unenforceable to the extent they were not properly disclosed or agreed to.

73. Plaintiff is entitled to a declaration under 28 U.S.C. § 2201(a) that the recorded mortgage is invalid, void, or unenforceable as against Plaintiff, or at minimum does not constitute an enforceable lien in the form recorded.

74. Declaratory relief is necessary to settle the parties' rights and obligations and to remove the cloud on Plaintiff's title.

**COUNT II**
**Quiet Title**

75. Plaintiff is the record owner of the property described above.

76. Defendant claims or asserts an adverse interest in the property through the mortgage recorded on or about January 8, 2026.

77. The recorded mortgage is a cloud on Plaintiff's title.

78. The recorded mortgage was materially altered without Plaintiff's knowledge or consent.

79. The recorded mortgage contains an unauthorized acknowledgment and a legal description different from the mortgage Plaintiff signed.

80. Plaintiff is entitled to a decree quieting title in her favor and removing the mortgage as a cloud on title, or in the alternative declaring that Defendant has no enforceable lien except as may be established by the exact instrument Plaintiff executed.

## COUNT III
## Cancellation of Instrument

81. Equity permits cancellation of an instrument that was materially altered after execution and is being used to assert rights against Plaintiff.

82. The mortgage recorded on or about January 8, 2026, materially differs from the mortgage Plaintiff executed on July 18, 2025.

83. The changes to the mortgage, including the legal description and acknowledgment, were made without Plaintiff's consent.

84. Plaintiff is entitled to cancellation of the altered mortgage and expungement of any enforceable effect it purports to have against Plaintiff or such other equitable relief as is necessary to restore the parties to the status quo ante.

## COUNT IV
## Temporary, Preliminary, and Permanent Injunctive Relief

85. Defendant has initiated foreclosure proceedings and continues to threaten enforcement based on the altered mortgage.

86. Absent injunctive relief, Plaintiff faces imminent and irreparable injury, including loss of her home and loss of title rights that cannot be fully compensated by money damages.

87. Plaintiff has a substantial likelihood of success on the merits.

88. The threatened injury to Plaintiff outweighs any harm to Defendant from preserving the status quo.

89. The public interest favors preventing enforcement of an instrument alleged to have been materially altered without authorization.

90. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief under *Fed. R. Civ. P.* 65.

**COUNT V**
**Fraud**

91. On or about July 18, 2025, at the closing of the transaction, Defendant, through its agents and representatives, represented to Plaintiff that the manufactured home located on the Property would be transferred to Plaintiff, or for Plaintiff's benefit, as part of the overall transaction.

92. Defendant further represented that the paperwork and closing documents would effectuate that transfer and would leave Plaintiff with the benefit of ownership, possession, or title to the manufactured home as part of the purchase.

93. These representations were material to Plaintiff's decision to proceed with the transaction because the manufactured home was part of the residence Plaintiff was purchasing, and Plaintiff understood the purchase price to include the land and the manufactured home together.

94. At the time the representations were made, Defendant knew, or recklessly disregarded, that the paperwork provided at closing did not clearly transfer the

manufactured home to Plaintiff, or for her benefit, and would not accomplish the promised transfer.

95. Defendant made the representations with the intent that Plaintiff rely on them and complete the transaction.

96. Plaintiff reasonably relied on those representations by proceeding with the transaction and accepting the documents delivered at closing.

97. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including title uncertainty, costs to investigate and attempt to correct the defective paperwork, loss of the benefit of the bargain as to the manufactured home, and other related injury.

**COUNT VI**
**Breach of Contract**

98. The July 18, 2025 Promissory Note, the mortgage, and the related transfer documents constituted a valid contract and part of the parties' agreed transaction.

99. Plaintiff performed, or was ready, willing, and able to perform, her obligations under the contract by tendering the monthly payment required.

100. Defendant breached the contract by refusing Plaintiff's payments, accelerating the debt, and taking actions inconsistent with the agreed repayment terms.

101. Defendant further breached the transaction by altering and recording a materially different mortgage without Plaintiff's consent.

102. Defendant further breached the parties' agreement and/or failed to complete performance by not properly transferring or perfecting title to the manufactured home, despite selling the manufactured home to Plaintiff as part of the transaction and issuing paperwork reflecting that transfer.

103. Plaintiff suffered damages as a result of Defendant's breaches.

## COUNT VII
## Unjust Enrichment, in the Alternative

104. Plaintiff pleads this count in the alternative under Fed. R. Civ. P. 8(d)(2).

105. Defendant received benefits from Plaintiff, including the loan transaction, the security interest they claim, and the ability to assert a lien against Plaintiff's property.

106. It would be unjust for Defendant to retain those benefits while enforcing an altered mortgage and refusing Plaintiff's tendered payments.

107. Equity requires restitution and disgorgement to the extent Defendant has been unjustly enriched.

## COUNT VIII
## Violations of the Truth in Lending Act, 15 U.S.C. § 1640

108. The July 18, 2025 transaction was a consumer credit transaction subject to TILA and Regulation Z, 12 C.F.R. Part 1026.

109. The loan was extended for personal, family, or household purposes, and was secured by Plaintiff's residential property and manufactured home.

110. Defendant was a creditor or acted through a creditor who regularly extended consumer credit.

111. Defendant failed to provide Plaintiff with the disclosures required by TILA and Regulation Z before consummation of the loan.

112. Defendant failed to accurately disclose the annual percentage rate.

113. Defendant failed to accurately disclose the finance charge or accurate itemization of the amount financed.

114. Defendant failed to provide an accurate payment schedule, including the monthly payment structure and balloon payment.

115. Defendant failed to disclose other material loan terms with the accuracy required by law.

116. Plaintiff incurred harm because she did not know the true cost, structure, and payoff terms of the loan and was deprived of the opportunity to make an informed credit decision, and she has suffered actual damages as a result of Defendant's TILA violations.

117. To the extent available under TILA, Plaintiff also seeks statutory damages, costs, and attorney's fees under 15 U.S.C. § 1640(a)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and grant the following relief:

A. Declare that the mortgage recorded on or about January 8, 2026 is invalid, void, or unenforceable as against Plaintiff, or alternatively unenforceable in its recorded form;

B. Enter judgment quieting title to the property in Plaintiff's favor;

C. Order cancellation and expungement, or other appropriate equitable relief, as to the altered mortgage recorded on or about January 8, 2026;

D. Enter temporary, preliminary, and permanent injunctive relief prohibiting Defendant, its agents, and those acting in concert with them from foreclosing, evicting Plaintiff, enforcing the disputed mortgage, or otherwise acting on the altered instrument pending final judgment and thereafter;

E. Award actual damages in an amount to be proven at trial;

F. Award statutory damages available under TILA, if any, in accordance with law;

G. Award punitive damages on the state-law claims to the extent permitted by law;

H. Award reasonable attorney fees and costs under TILA and any other applicable law;

I. Award pre-judgment and post-judgment interest as allowed by law; and

J. Grant such other and further relief as the Court deems just and proper.

/s/ Rhonda Steadman Hood
Rhonda Steadman Hood (HOO024)
HOOD LAW, LLC
1117 22nd Street S
Birmingham, AL 35205
Tel: (205) 323-4123
rhonda@whlfirm.com

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

/s/ Rhonda Steadman Hood
OF COUNSEL